William J. Becker, Jr., Esq. (SBN: 134545)
Bill@FreedomXLaw.com
Jeremiah D. Graham, Esq. (SBN: 313206)
jeremiahdgraham@gmail.com
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone: (310) 636-1018
Facsímile: (310) 765-6328

Harmeet K. Dhillon, Esq. (SBN: 207873)
harmeet@dhillonlaw.com
Mark P. Meuser, Esq. (SBN 231335)
mmeuser@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsímile: (415) 520-6593

Counsel for Plaintiff, *Abiding Place Ministries*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ABIDING PLACE MINISTRIES**, a Church, <br><br> Plaintiff <br><br> vs. <br><br> **GAVIN NEWSOM**, in his official capacity as the Governor of California; **XAVIER BECERRA**, in his official capacity as the Attorney General of California; **SONIA Y. ANGELL**, in her official capacity as State Public Health Officer and Director of the California Department of Public Health; **COUNTY OF SAN DIEGO**, a | Case No. __'21 CV0518 BAS LL__ <br><br> **COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES** <br><br> **Demand For Jury Trial** |

1

**Verified Complaint**

municipality; and **DOES 1 through 100**, inclusive,

Defendants.

Plaintiff, Abiding Place Ministries, by and through its undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, on their own behalf and as private attorneys general, and in support thereof allege the following:

## INTRODUCTION

1.     In their response to a global pandemic, State and County officials arbitrarily, heavy-handedly, and seemingly without reservation or respect for basic constitutional norms "moved the goalposts on pandemic-related sacrifices for months, adopting new benchmarks that always seem to put restoration of liberty just around the corner." *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 720 (2021) (Gorsuch, J., statement). "California's discrimination against religious worship services contravenes the Constitution." *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Kavanaugh, J., dissenting).

2.     This action revives the action previously assigned Case No. 3:20-cv-00683-BAS-AHG, which was voluntarily dismissed without prejudice after the Defendants modified their COVID-19 policies prohibiting houses of worship from holding in-person gatherings, thus moving the goalposts and effectively rendering that and other similar lawsuits moot. Under then-existing legal precedent, the policy changes deprived Plaintiff of Art. III standing in the absence of a live case or controversy to prosecute their claims both for damages—including nominal damages—and for equitable relief.

3.     On March 8, 2021, the U.S. Supreme Court decided the case of *Uzuegbunam v. Preczewski*, 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021), holding

2

**Verified Complaint**

that for purposes of Article III standing, "nominal damages provide the necessary redress for a completed violation of a legal right." *Id*. at *7.

4.    Pursuant to this holding, as realleged herein, Plaintiff is entitled to reinstate its claim for nominal damages because the State and County's decision to prohibit Plaintiff from assembling for the purposes of religious worship is a completed violation of Plaintiff's legal rights.

## JURISDICTION AND VENUE

5.    This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's constitutional rights to freedom of religion, speech, and assembly, due process, and equal protection rights under the First and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested damages and redress—including nominal damages—under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

6.    The Southern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants maintain offices, exercise their authority in their official capacities, and/or will enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

## PLAINTIFF

7.    Plaintiff Abiding Place Ministries (hereinafter alternatively referred to as "Abiding Place Ministries" and the "Church," inclusive of its members) is registered with the IRS as a 501(c)(3) charitable non-profit corporation formed and duly operating as a church under the laws of the State of California.

/ / /

/ / /

**Verified Complaint**

**DEFENDANTS**

8.    Defendant Gavin Newsom is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed the State Order.

9.    Defendant Xavier Becerra is made a party to this Action in his official capacity as the Attorney General of California. Under California law he is the chief law enforcement officer with supervision over all sheriffs in the state. Cal. Const. Art. V, § 13.

10.    Defendant Sonia Y. Angell is made a party to this Action in her official capacity as the State Public Health Officer and Director of the California Department of Public Health. She signed the State public health directives.

11.    The County of San Diego is a public entity duly formed and organized under the laws of the State of California (hereinafter, the "County"), and is responsible for promulgating, interpreting and enforcing the Orders issued by the San Diego County Public Health Officer.

12.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, and for that reason has sued them by their fictitious names. On information and belief, Plaintiff alleges that each of these fictitiously named Defendants are responsible in some manner for some or all of the acts alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of the fictitiously-named Defendants once ascertained.

13.    Plaintiff is informed and believe, and thereon alleges, that each of the Defendants sued herein, including those named herein as Does, are the agents, servants, employees, licensees, guarantees, indemnitors, invitees, or assignees of each other, and in doing the things herein alleged acted within the course and scope

**Verified Complaint**

of such agency, employment, license, guaranty, indemnity, invitation, assignment and/or relationship and with the full knowledge, consent and approval of the remaining Defendants.

## FACTUAL BACKGROUND

### I.    The State and National Emergency

14.    The timeline of facts relating to the COVID-19 pandemic and restrictions placed on the public by state and regional authorities is well-known to the Court. *See S. Bay United Pentecostal Church v. Newsom*, 20-CV-00865-BAS-AHG, 2020 WL 7488974 (S.D. Cal. Dec. 21, 2020), aff'd, 985 F.3d 1128 (9th Cir. 2021).

15.    In December 2019, a novel (new) coronavirus known as SARS-CoV-2 ("the virus") was first detected in Wuhan, Hubei Province, People's Republic of China, causing the global spread of outbreaks of the coronavirus disease COVID-19. The Secretary of Health and Human Services (HHS) declared a public health emergency on January 31, 2020, under section 319 of the Public Health Service Act (42 U.S.C. 247d), in response to COVID-19.

16.    Beginning in early March 2020, state and regional authorities began imposing unprecedented restrictions on communities limiting public gatherings and mandating facial coverings and social distancing protocols. A roster of business types were labeled either "essential" or "non-essential" depending on unspecified factors. "Essential" businesses were allowed to remain open while businesses deemed non-essential, including the Church, were required either to shut down or operate under proscribed limitations.

17.    On March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency in response to the threat of COVID-19.[1]

---

[1] Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of COVID-19; https://www.gov.ca.gov/2020/03/04/governor-

5

**Verified Complaint**

18.     On March 19, 2020, the Governor issued Executive Order N-33-20 (the "State Order").[2] The State Order provided, *inter alia*, that "all residents are directed to immediately heed the current State public health directives" and to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."

19.     The State Order provided that Californians "must have access to such necessities as food, prescriptions, and health care" and therefore "may leave their homes or places of residence to obtain or perform [these] functions [], or to otherwise facilitate authorized necessary activities."

20.     The State Order provided that the public health officer "may designate additional sectors as critical in order to protect the health and well-being of all Californians" while "[b]usinesses and organizations that provide critical infrastructure for the state are exempted, including health care and public health, public safety, food and agriculture and media."[3]

21.     On March 22, 2020, the State published a list of "Essential Critical Infrastructure Workers to help state, local, tribal and industry partners as they work to protect communities."[4] The list included 153 bullet pointed exempt essential business categories. Identified among the list of exempt essential business service categories were "[f]aith based services that are provided through streaming or other technology."

## II.     Nature Of The Church Environment

22.     Abiding Place Ministries was officially incorporated in San Diego County as a Church on February 21, 1986. The Church has a small congregation,

---

newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/

[2] https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf

[3] https://covid19.ca.gov/stay-home-except-for-essential-needs/#top

[4] https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf

**Verified Complaint**

with less than 100 persons typically present at its Sunday meeting. Since its founding, the Church has met at various locations throughout the County and believes the essential gathering of its members can take place anywhere, but they must assemble in one place.

23.     Each Sunday, since its founding, with the exception of April 12, 2020, and April 19, 2020, it has assembled as a congregation. On those dates, as is described more fully below, Defendants prohibited the Church's members from physically gathering as a congregation notwithstanding the safety protocols they intended to follow. Defendants' orders combined with the County's threat of criminal prosecution forced the Church's members to remain away from church against their will and threatened to punish them for church attendance.

24.     Abiding Place Ministries does not own or hold worship services in a particular building. In June 2019, Abiding Place Ministries purchased a 427-acre ranch located at 2155 N. Campo Truck Trl., Campo, CA 91906, known as the World Mission Base, San Diego ("Mission Base"). The Mission Base is dedicated to training missionaries and furthering the Church's mission programs.

25.     As part of its mission programs, the Church engages in agricultural production to feed at-risk people groups (e.g., orphans, widows, elderly, poor, homeless, migrants, etc.) and trains missionaries to sustainably produce food to serve those groups. Most members of the Church's congregation work on the Mission Base, participating in its agricultural endeavors. Most members of the congregation are active in the Church's domestic and international mission programs. On its Mission Base, the Church is actively cultivating a variety of staple foods, including olive trees, citrus and a variety of other fruits and vegetables, and actively raising and nurturing flocks of sheep and chickens and a herd of cows. These activities are exempt from all State and County orders.

/ / /

7

**Verified Complaint**

### III.   The Church's Early Mitigation Efforts

26.     In January 2020, prior to the HHS emergency declaration, the Pastor of Abiding Place Ministries, Mark Spitsbergen ("Pastor Mark"), received a call from a colleague in Asia alerting him to the outbreak of the virus, and warning him that it would quickly spread worldwide.

27.     Pastor Mark is himself a scientist and expert on viruses who worked in the field of virology and genetics for fourteen years at Eli Lilly and Company in San Diego. He immediately began to publicly warn the members of the Church and his extended network about the onset of the virus.

28.     Beginning in January 2020, Pastor Mark and other Church leaders were already beginning to take the threat of a pandemic seriously, well before news of the outbreak had reached the general public. They admonished the Church members, among other things, not to eat at restaurants, to limit trips outside the home, to avoid all non-essential contact with the general public, to avoid touching their faces, to carry sanitization wipes and apply them to their hands and other surfaces after coming in contact with any member of the public, to sanitize any products they purchased, to stand away from people when speaking, to be respectful of other people and avoid spreading germs to them, to be aware that anyone who speaks in the grocery store spreads their germs on everything being purchased, to wash their hands for at least thirty seconds and to avoid contact with any surface that had not been sanitized. These admonitions were frequently repeated and Church members agreed to follow the Church's guidelines.

29.     Because of the pandemic and the closure Orders, the Church met outdoors—at the Mission Base—for worship on March 22, 2020. The following week, March 29, the Church met under a large open-air tent at the Mission Base to avoid the harsh sunlight.

**Verified Complaint**

30.    The Church interpreted the Governor's March 19 Order describing "faith-based services" as essential to exempt it from the business closures and believed that its members were permitted to leave their home when necessary. The Church believes that physically assembling is the single most essential part of their life. The Church's members believe that failing to assemble for worship is an unacceptable violation of God's commands. The Church's beliefs require that its members physically assemble. Without an "assembly," the members of the Church cannot faithfully practice their religion. The Bible describes God having placed gifts of healing and miracles in the midst of the "assembly."

## IV.    Enforcement Of The State and County Orders

31.    On March 27, 2020, San Diego County Public Health Officer Wilma J. Wooten ("Wooten") promulgated an order prohibiting gatherings of more than ten persons ("County Order"), subject to all the same exemptions as the State Order.[5]

32.    On March 29, 2020, as the Church was conducting its worship service under a tent, a San Diego County Sheriff's deputy visited the property and informed the Church's attorney, Jeremiah Graham ("Graham"), a member of the Church who was present, that he was enforcing the Governor's Executive Order in response to a complaint from a local homeowner. The Deputy requested that the Church end its assembly while admitting that he was not familiar with the Governor's Order. The Deputy and Graham arranged to have Graham meet with senior Sheriff officials to discuss the County's mitigation guidelines and to clarify the Church's legal obligations under them.

33.    The Church learned about the County's March 27 Order only after conducting its worship service on March 29, 2020.

/ / /

_____

[5] This version of the County Order is no longer accessible on the web.

9

**Verified Complaint**

34.     The Church first learned that it was not exempt as an essential service in meetings with Sheriff officials in early April 2020. The Church was informed that its services were considered non-essential, and that notwithstanding any health precautions they took, they would be subject to criminal punishment if they assembled.

35.     On April 2, 2020, Graham and Pastor Mark met with the Sheriff's Department and explained the essential nature of their services and the protective measures they had taken in the past. They offered to practice heightened mitigation efforts to avoid conflict with the County's restrictions while maintaining in-person gatherings. The Sheriff's officers forwarded the Church's proposals to Wooten and other San Diego County officials for input and guidance.

36.     Among other mitigation protocols, the Church offered to separate members by household in a large open field, maintaining marked 10-foot separation zones, or having members attend a "drive-in" service while remaining in their cars. (A true and correct copy of the proposals is attached hereto as Exh. A and incorporated herein by reference in full.) The Church agreed to comply with any lawful restrictions the County placed on Church services, such as wearing PPE and even quarantining their members at the Church mission base for 14 days.

37.     On April 4, 2020, Wooten informed the Church that its members "must stay at home and not congregate" on and after Easter, April 12, 2020. (A true and correct copy of her April 4 letter is attached hereto as Exh. B and incorporated herein by reference in full.)

38.     After receiving this letter, the Church proposed additional mitigation protocols, all of which were in excess of what was required for gatherings considered "essential" under the Defendants' orders.

39.     On April 8, 2020, Wooten responded by rejecting the proposed mitigation protocols. (A true and correct copy of her April 8 letter is attached hereto

10

**Verified Complaint**

as Exh. C and incorporated herein by reference in full.) Attached to her email was a revised emergency Order placing heightened restrictions on non-exempt private gatherings (the "Revised Order"). (A true and correct copy of the revised emergency order is attached hereto as Exh. D and incorporated herein by reference in full.)

40. The revised order changed the cap on gatherings from "ten persons" to "one person." This made any religious assembly a crime, while continuing to allow all gatherings Defendants considered essential. The revised emergency Order stated:

> All public or private "gatherings," … are prohibited…. "Gathering" is any event or convening that brings together **more than one person** in a single room or single indoor or outdoor space at the same time, including people in multiple vehicles in one location. […] A gathering does not include operations at essential businesses…

(Exh. D.) (Emphasis added.)

41. Wooten made certain that the Church would feel the sting of her response to its mitigation proposals by threatening the Church with arrest and fines for non-compliance, stating: "If the members of your congregation do not abide by my Order, the Sheriff will take actions necessary to enforce the Order." *Id*. Wooten additionally emphasized that "members of your congregation are not allowed to travel to your site. This would be an unlawful gathering, even if they remain in their vehicles as they did last Sunday." *Id.*

42. This forced the Church's members to remain away from church against their will, under threat of punishment for church attendance.

43. By contrast, other public gatherings were not faced with the same threat of criminal penalties nor inhibited by the same arguments justifying the closure of houses of worship. For example, on April 10, 2020, Defendant San Diego County

**Verified Complaint**

endorsed and promoted various mass gatherings for the purpose of saying tribute to regional first responders and medical workers.[6]

**V.   The Church Complies With Defendants' Oppressive Orders**

44.   The Church did not hold communal worship service on April 12, 2020. Instead, Pastor Mark live-streamed a simple sermon via the internet. In his message, Pastor Mark lamented that he felt as though he had betrayed Christ Jesus by failing to lead the congregation assembled.

45.   On April 18, 2020, the Church became aware of a statement made by State officials that drive-in services were now permissible, but the County Sheriff's Department was unable to confirm this before the Church's next service.

46.   On April 19, 2020, the Church, heeding the Defendants' continuing ban on religious gatherings, suffering an irreparable violation of conscience and enduring a continued violation of its First Amendment rights, did not assemble.

**VI.   Defendants Permit Drive-In Services**

47.   The State Order, the public health directives, the County Order and the Revised County Order are referred to herein, collectively, as the "Orders".

48.   On April 20, 2020, the County entered its "Supplemental Status Update" authorizing drive-in worship services. The County update adopted the Governor's interpretation of his Executive Order permitting drive-in worship services subject to compliance with physical distancing guidelines.

49.   Based on the County's adoption of the Governor's new interpretation of his Guidance, the Church held Sunday drive-in style services April 26, 2020, through May 24, 2020.

/ / /

---

[6] https://www.sandiegouniontribune.com/news/public-safety/story/2020-04-10/fire-police-crews-salute-healthcare-workers-with-light-show-outside-san-diego-hospitals

12

**Verified Complaint**

50.     Under the Orders, the Church remained subject to criminal punishment unless it conducted its service in accordance with the State's mandatory Guidance.

51.     Even as Defendants were threatening houses of worship with criminal penalties for in-person gatherings, they were justifying mass gatherings of political demonstrators. On May 30 and May 31, 2020, Defendant County of San Diego allowed public political demonstrations to take place in violation of the stay-at-home orders without the threat of criminal penalty.  *See* Figures 1 & 2.



*Figure 1: Mass Gathering Outside County Administration Building*



*Figure 2: Mass Gathering Outside County Administration Building*

/ / /

/ / /

/ / /

/ / /

13

**Verified Complaint**

52.     Defendant Newsom lent his support to the demonstrations on June 1, 2020, by encouraging the political gatherings, stating, "For those of you out there protesting, I want you to know that you matter…. To those who want to express themslves … God bless you. Keep doing it. Your rage is real."[7]

53.     The Defendants' Orders, including the Revised Order and the State Order, remain capable of repetition yet evading review because they are not codified; they are developed and applied arbitrarily, inconsistently and indefinitely; they are not subject to any public oversight or review; and they are modified every so often as to preclude any potential equitable relief.

## FIRST CLAIM FOR RELIEF
### Free Exercise Clause of First Amendment to U.S. Constitution
### (42 U.S.C. § 1983)
(Against all Defendants)

54.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

55.     The Orders, and Defendants' enforcement thereof violated the Free Exercise Clause of the First Amendment, both facially and as-applied to Plaintiff.

56.     As the Supreme Court noted in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020), "[E]ven in a pandemic, the Constitution cannot be put away and forgotten. [] Restrictions [that] effectively bar[] many [people] from attending religious services[] strike at the very heart of the First Amendment's guarantee of religious liberty."

57.     Defendants reduced Plaintiff's activities to second-class, "non-essential" status (at best), and threatened criminal penalties for religious assembly.

---

[7] Hannah Wiley, *'Your rage is real,' Gavin Newsom tells California protestors*, June 1, 2020, https://www.sacbee.com/news/politics-government/capitol-alert/article243173056.html

**Verified Complaint**

Defendants burdened Plaintiff's religious exercise by forcing them to violate their sincerely held religious beliefs.

58.     Plaintiff is entitled to an award of nominal damages for the completed violation of a legal right as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution.

59.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

**Establishment Clause of First Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(Against All Defendants)

60.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

61.     The Orders, and Defendants' enforcement thereof violated the Establishment Clause of the First Amendment, both facially and as-applied to Plaintiff.

62.     "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can […] force nor influence a person […] to remain away from church against his will […] No person can be punished for […] church attendance or non-attendance." *Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 15-16 (1947).

63.     The Orders and Defendants' enforcement thereof forced Plaintiffs' members to remain away from Church against their will, and threatened punishment for church attendance.

64.     The Orders, and Defendants' enforcement thereof, had the primary effect of inhibiting religious activity.

**Verified Complaint**

65.   Defendants failed to avoid excessive government entanglement with religion.

66.   There is no historical precedent in the United States for inhibiting religious practices on terms more restrictive than those imposed on similar secular activities, as Defendants did here.

67.   Plaintiff is entitled to an award of nominal damages for the completed violation of a legal right as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution.

68.   Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

**Free Speech Clause of First Amendment to U.S. Constitution**

**(42 U.S.C. § 1983)**

(Against all Defendants)

69.   Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

70.   Plaintiff engages in protected speech by assembling for the purpose of worship, religious exhortations, singing psalms, hymns and spiritual songs, partaking of communion, prayer, baptism, confession, altar call and other forms of religious expression.

71.   The Orders and Defendants' enforcement thereof violated the First Amendment, both facially and as-applied to Plaintiffs.

72.   Under Defendants' Orders, public gatherings and church services have been either prohibited or limited while additionally being subject to numerous restrictions.

16

73.     Defendants' imposition of a total prohibition on religious services was unreasonable.

74.     The Orders are unconstitutionally overbroad, and therefore void as a matter of law, both on their face, and as applied to Plaintiff.

75.     Plaintiff is entitled to an award of nominal damages for the past loss of its constitutional rights as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution

76.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

### Violation of First Amendment Freedom of Assembly Clause

### (42 U.S.C. § 1983)

(Against all Defendants)

77.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

78.     The Orders, and Defendants' enforcement thereof, violated the First Amendment, both facially and as-applied to Plaintiff. The First Amendment of the Constitution protects the "right of the people peaceably to assemble." The Freedom of Assembly Clause was incorporated against the states in *De Jonge v. Oregon*, 299 U.S. 353 (1937).

79.     "The right of free speech, the right to teach, and the right of assembly are, of course, fundamental rights." *Whitney v. California*, 274 U.S. 357, 373 (1927). "[P]eaceable assembly for lawful discussion cannot be made a crime." *DeJonge v. Oregon*, 299 U.S. 353, 365 (1937).

Verified Complaint

80.     Between April 12 and May 24, 2020, Defendants imposed an outright ban on in-person gatherings at the Church, making the Church's peaceable assembly a crime.

81.     Defendants violated Plaintiff's right by prohibiting religious gatherings while permitting gatherings it considered "essential."

82.     Plaintiff is entitled to an award of nominal damages for the past loss of its constitutional rights as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution

83.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### Due Process Clause of Fourteenth Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

(Against all Defendants)

84.     Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

85.     The Orders and Defendants' enforcement thereof violated Plaintiff's substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution.

86.     Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include the First Amendment rights alleged herein.

87.     Plaintiff is entitled to an award of nominal damages for the past loss of its constitutional rights as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution

**Verified Complaint**

88.   Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SIXTH CLAIM FOR RELIEF**

**Equal Protection Clause of Fourteenth Amendment to U.S. Constitution**
**(42 U.S.C. § 1983)**

(Against all Defendants)

89.   Plaintiff incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

90.   The Orders and Defendants' enforcement thereof violated the Equal Protection Clause of the Fourteenth Amendment, both facially and as-applied to Plaintiffs.

91.   The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

92.   Equal protection requires the state to govern impartially—not draw arbitrary distinctions between individuals (or groups) based solely on differences that lack any relevant purpose associated with a legitimate governmental interest.

93.   Defendants intentionally and arbitrarily categorized individuals and conduct as either "essential" or "non-essential." Those persons classified as "essential," or as participating in essential services, were permitted to go about their business and activities, provided certain mitigation protocols were employed. Those classified as "non-essential," or as engaging in non-essential activities, including Plaintiff's members, were required to stay in their residence, unless it became necessary for them to leave for one of the enumerated "essential" activities.

94.   Plaintiff is entitled to an award of nominal damages for the past loss of its constitutional rights as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution

**Verified Complaint**

95.     Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1.      For an order and judgment declaring that the Orders, facially and as-applied to Plaintiff, violated the First and Fourteenth Amendments to the U.S. Constitution;

2.      For nominal damages for the past loss of Plaintiff's constitutional rights as set forth in this Complaint against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution;

3.      For an award of reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

4.      Such other and further relief as the Court deems appropriate and just.


Date: March 22, 2021                      FREEDOM X


                                 By:    /s/ William J. Becker, Jr.
                                        WILLIAM J. BECKER, JR., ESQ. (SBN: 134545)
                                        Bill@FreedomXLaw.com
                                        JEREMIAH D. GRAHAM, ESQ. (SBN: 313206)
                                        jeremiahdgraham@gmail.com

**Verified Complaint**

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Abiding Place Ministries demands trial by jury on all individual claims they bring against Defendants in this action of all issues so triable.

DATE: March 22, 2021

FREEDOM X

*s/ William J. Becker, Jr.*
Attorneys for Plaintiffs

**VERIFICATION ON FOLLOWING PAGE**

21

**Verified Complaint**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Mark Spitsbergen, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Date: March 22, 2021

Mark Spitsbergen, on behalf of
Abiding Place Ministries

**Verified Complaint**