UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABIDING PLACE MINISTRIES, a Church,<br><br>                             Plaintiff,<br><br>v.<br><br>GAVIN NEWSOM, in his individual capacity; et al.,<br><br>                           Defendants. | Case No.: 3:21-cv-00518-RBM-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO DISMISS**<br><br>**[Doc. 21]** |

      On May 28, 2021, Plaintiff Abiding Place Ministries ("Plaintiff") filed their First Amended Complaint (Doc. 13) ("FAC"), naming Gavin Newsom, Xavier Becerra, Sonia Y. Angell, Wilma J. Wooten, County of San Diego ("County"), and Does 1 through 100 as defendants. Aside from the County, all Defendants[1] have been named in their individual

---

[1] The Court notes that the header of each cause of action within the FAC contains a parenthetical that each claim is directed "Against All Defendants In Their Individual Capacity Only." (FAC at 14-20.) Although the header omits reference to the County, the Court will construe this omission as an error in light of the Plaintiff and the County's briefing on the motion to dismiss.

1

capacities. On August 30, 2021, Defendants Gavin Newsom, Xavier Becerra, and Sonia Y. Angell ("State Defendants"), in their individual capacities, filed a Motion to Dismiss Plaintiff's FAC for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion").[2] (Doc. 21.) The State Defendants filed a Request for Judicial Notice accompanying their motion to dismiss, which the Court will address herein. (Doc 21-2 at 1.) On August 30, 2021, Defendants Wilma J. Wooten and the County of San Diego ("County Defendants") also filed a Motion to Dismiss Plaintiff's FAC, which will be analyzed in a separate order. (Doc. 22.) On October 18, 2021, Plaintiff filed a combined response in opposition to the State Defendants' Motion and the County Defendants' Motion. (Doc. 25.) The State Defendants filed a reply on November 15, 2021. (Doc. 26.) For the reasons outlined below, the State Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.    Factual Background

On March 4, 2020, Governor of California Gavin Newsom declared a State of Emergency in response to the threat of COVID-19. (FAC ¶ 18.) On March 19, 2020, Governor Newsom issued Executive Order N-33-20, also known as the "Stay at Home Order" (herein "State Order"). (*Id.* at ¶ 19.) This State Order required that all Californians stay home or at their place of residence except as needed to "maintain the continuity of operations of the federal critical infrastructure sectors[.]" (*Id.* at ¶ 19.) It further provided that all Californians "must have access to such necessities as food, prescriptions, and health care" and therefore "may leave their homes or places of residence to obtain or perform [these] functions . . . or to otherwise facilitate authorized necessary activities[.]" (*Id.* at ¶

---

[2] Plaintiff's original complaint filed on March 24, 2021, named each State Defendant in their official capacity.

20.) On March 22, 2020, the State published a list of "Essential Critical Infrastructure Workers" naming "faith-based services that are provided through streaming and other technology" as one of the exempted essential categories. (*Id*. at ¶ 22.)

On March 27, 2020, San Diego Public Health Officer Wilma J. Wooten "promulgated an order prohibiting gatherings of more than ten persons . . . subject to all the same exemptions as the State Order"("County Order"). (*Id*. at ¶ 32.) On April 8, 2020, Wooten revised the County Order changing the cap on gatherings from ten persons to one person, effective April 9, 2020. (*Id*. at ¶¶ 40-41; Doc. 13-3, Ex. D at 19-24.)

Plaintiff is a church based in San Diego County, which hosts its small congregation of typically fewer than 100 persons for Sunday service at their outdoor ranch venue, the Mission Base. (FAC at ¶¶ 23, 25.) "Because of the pandemic and the closure Orders, the Church met outdoors—at the Mission Base—for worship on March 22, 2020. The following week, March 29, the Church met under a large open-air tent at the Mission Base . . ." (*Id.* at ¶ 30.) Plaintiff claims they interpreted the State Order describing "faith-based services" as essential to "exempt it from the business closures" and they "believed that its members were permitted to leave their home when necessary." (*Id.* at ¶ 31.) The FAC alleges it was not until March 29, 2020 when a San Diego Sheriff's Deputy visited the Church's service, and early April, when meeting with County Sheriff officials, that the Church became aware they could not congregate outdoors due to the State and County Orders. (*Id.* at ¶¶ 33-35.)

On April 2, 2020, Plaintiff, through their attorney, Jeremiah Graham, and pastor, Mark Spitsbergen, proposed multiple mitigation protocols to the San Diego County Sheriff's Department "to avoid conflict with the County's restrictions while maintaining in-person gatherings" including offering drive-in services. (*Id.* at ¶¶ 36-37; Doc. 13-1, Ex. A at 1-10.) On April 4, 2020, Wooten wrote a letter informing Plaintiff that its members "must stay at home and not congregate." (FAC at ¶ 38; Doc. 13-2, Ex. B at 2-3.) Plaintiff then proposed additional mitigation protocols, which were rejected by an April 8, 2020

letter from Wooten. (*Id*. at ¶¶ 39-41; Doc. 13-3, Ex. C at 2-26.) Wooten's letter to Plaintiff stated, "[m]embers of your congregation are not allowed to travel to your site. This would be an unlawful gathering, even if they remain in their vehicles as they did last Sunday." (*Id*. at ¶ 42; Doc. 13-3, Ex. C at 16-17.) It further advised "[i]f the members of your congregation do not abide by my Order, the Sheriff will take actions necessary to enforce the Order." (*Id*. at ¶ 42; Doc. 13-3, Ex. C at 16-17.) Consequentially, Plaintiff did not congregate in person on April 12 and April 19, 2020. (*Id*. at ¶¶ 45-47.) On April 18, 2020, Plaintiff became aware of a statement made by State officials clarifying that "drive-in services were now permissible" under the State Order. (*Id*. at ¶ 46.) On April 20, 2020, the County entered its "Supplemental Status Update" authorizing drive-in worship services which adopted the Governor's interpretation of the State Order by allowing drive-in services. (*Id*. at ¶¶ 48-49.)

B.   Procedural Background

On May 28, 2021, Plaintiff's FAC named State Defendants Gavin Newsom, Xavier Becerra, and Sonia Y. Angell in their individual capacities only. The FAC is a revival of an earlier filed case filed in this District, *Abiding Place Ministries v. Wooten et al.*, Case No. 3:20-cv-00683-BAS-AHG, which was voluntarily dismissed without prejudice "after the Defendants modified their COVID-19 policies prohibiting houses of worship from holding in-person gatherings," thus rendering the lawsuit moot.[3] (FAC at ¶ 2); *see also* Case No. 3:20-cv-00683-BAS-AHG, Docs. 58, 66-67. The FAC here asserts six claims for relief, including violations of the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First

---

[3] U.S. District Judge Cynthia Bashant denied Plaintiff's application for a temporary restraining order and denied Plaintiff's motion for preliminary injunction seeking to enjoin enforcement of orders restricting Plaintiff's engagement in religious services. *See* Case No. 3:20-cv-00683-BAS-AHG, Docs. 2, 7-8, 10, 24, 58.

1  Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause
2  of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment.
3  (FAC at 14-21.)  Plaintiff seeks relief only in the form of nominal damages plus attorney
4  fees, costs, and expenses pursuant to 42 U.S.C. § 1988.  (FAC at ¶¶ 2-4.)

5        The State Defendants argue three separate grounds for dismissal: (1) Plaintiff has
6  failed to establish Article III standing; (2) the State Defendants are entitled to qualified
7  immunity; and (3) the entirety of the FAC fails to state a claim upon which relief could be
8  granted.  (Doc. 21.)  Plaintiff contends Article III standing exists, qualified immunity
9  should not extend to the State Defendants, and Plaintiff has pled sufficient facts to support
10 the six causes of action asserted in the FAC.  (Doc. 25 at 5-16.)

## II.    REQUEST FOR JUDICIAL NOTICE

12     The Court first addresses the State Defendants' request for judicial notice which
13 accompanied its motion to dismiss.  (Doc 21-2 at 1.)

14     A court generally cannot consider materials outside the pleadings on a motion to
15 dismiss for failure to state a claim.  FED. R. CIV. P. 12(d).  A court may, however, consider
16 materials subject to judicial notice without converting the motion to dismiss into one for
17 summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  Under Federal
18 Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a
19 party's request, of facts that are not subject to reasonable dispute because they are (1)
20 "generally known within the trial court's territorial jurisdiction; or (2) can be accurately
21 and readily determined from sources whose accuracy cannot reasonably be questioned."
22 FED. R. EVID. 201(b).  A court may take judicial notice of court filings, other matters of
23 public record, and documents that are readily verifiable, including public records and
24 government documents available from reliable sources on the internet, such as websites
25 run by governmental agencies.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d
26 741, 746 n.6 (9th Cir. 2006); *see U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d
27 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x

594 (9th Cir. 2017) ("the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotations omitted); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG POR, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("[i]nformation on government agency websites has often been treated as properly subject to judicial notice").  A court may also take judicial notice of publications introduced "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

The State Defendants request the Court take judicial notice of fifteen exhibits, including final judgments entered in similar COVID-19 related cases[4] (Exhibits 1-4), press releases from the State of California, California Department of Public Health ("CDPH"), and archived website articles containing California's industry guidance on COVID-19 (Exhibits 5-10, 13), Governor Newsom's Executive Order N-01-21 (Exhibit 11), California's State Public Health Officer Order of June 11, 2021 (Exhibit 12), and hearing transcripts denying applications for temporary restraining orders in similar COVID-19 related cases[5] (Exhibits 14-15).  Plaintiff does not object to the request nor does it call into question the credibility of the source of any material subject to the request for judicial notice. (Doc. 25.)

/ / /

---

[4] *Harvest Rock Church v. Newsom*, No. 2:20-cv-06414-JGB-KKX (C.D. Cal. May 14, 2021); *South Bay United Pentecostal Church v. Newsom*, No. 3:20-cv-00865-BAS-AHG (S.D. Cal. June 10, 2021); *Burfitt v. Newsom*, No. BCV-20-102267 (Kern Co. Super. Ct. June 14, 2021); and *Tandon v. Newsom*, No. 5:20-cv-07108-LHK (N.D. Cal. June 24, 2021).

[5] *Abiding Place Ministries v. Wooten*, No. 3:20-cv-00683-BAS-AHG (S.D. Cal. Apr. 10, 2020); and *South Bay United Pentecostal Church v. Newsom*, No. 3:20-cv-00865-BAS-AHG (S.D. Cal. May 15, 2020).

The government documents, court filings, press releases and news articles referenced above are all proper subjects of judicial notice. The Court therefore **GRANTS** the State Defendants' request for judicial notice.

### III. MOTION TO DISMISS

A. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a district court may dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Additionally, pursuant to Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

1  When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend
2  even if no request to amend the pleading was made, unless it determines that the pleading
3  could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N.*
4  *Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

   B.  Analysis
   
   i.  *Article III Standing*

7  The State Defendants allege subject matter jurisdiction is not present because
8  Plaintiff lacks Article III standing and consequently a justiciable case or controversy. (Doc.
9  21 at 22.)

10  To establish Article III standing, a plaintiff must demonstrate three elements: a
11  concrete "injury in fact," a causal connection between the injury and defendant's conduct,
12  and a likelihood that the injury will be redressed by a favorable decision. *Lujan v.*
13  *Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,
14  1547 (2016). To satisfy the casual connection element, the injury must be "fairly traceable
15  to the challenged action of the defendant, and not the result of the independent action of
16  some third party not before the court." *Id.* at 560 (internal quotations omitted). However,
17  "causation can be established even if there are multiple links in the chain, . . . as long as
18  the chain is not hypothetical or tenuous." *Juliana v. United States*, 947 F.3d 1159, 1169
19  (9th Cir. 2020) (internal quotations and citations omitted).

20  As an initial matter, the State Defendants argue Plaintiff failed to allege any facts
21  showing the State Defendants' direct, personal participation in any alleged constitutional
22  violation or harm to Plaintiff. (Doc. 21 at 22.) The State Defendants claim this failure to
23  allege direct participation in any violation is particularly glaring with respect to Defendant
24  Becerra, "who is not alleged even to have authorized any of the challenged orders." (*Id.* at
25  23.) They contend the FAC focuses primarily on actions and enforcement measures taken
26  by the County Defendants, not the State. (*Id.*) The State Defendants contend the original
27  State Order never actually prohibited drive-in services such that the FAC fails to

demonstrate a causal link between the State's orders and Plaintiff's purported inability to conduct drive-in services in April 2020.  (*Id.* at 23.)

Plaintiff contends it has alleged a causal connection of injury as to each of the Defendants, as it did not congregate in person for services on April 12th and 19th due to threatened enforcement of State and County Orders.  (Doc. 25 at 9.)  Plaintiff claims each State Defendant caused injury, as Defendant Newsom signed the State Order, Defendant Becerra supervised all sheriffs in the State, including the San Diego County Sheriff's Office who enforced the State Order, and Defendant Angell signed the State public health directives, which included the list of exempted business categories.  (*Id.* at 7.)

The parties do not appear to dispute: (1) Plaintiff suffered a concrete "injury in fact," i.e., being unable to congregate in person on April 12 and April 19, 2020; and (2) a decision in Plaintiff's favor could redress its injury.  *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) ("a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right.")  Accordingly, the Court finds the above elements have been sufficiently demonstrated.  The Court now turns to whether Plaintiff has demonstrated a causal connection between the injury and the State Defendants' conduct.  *Lujan*, 504 U.S. at 560.

To sue under 42 § U.S.C. 1983, Plaintiff must allege each of the State Defendants personally participated in the deprivation of Plaintiff's rights.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A defendant cannot be held liable under a 42 § U.S.C. 1983 claim when the sole theory of liability is respondeat superior because "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor*, 880 F.2d at 1045; *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (explaining a supervisory official is liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

9

connection between the supervisor's wrongful conduct and the constitutional violation.") (quotation marks and citation omitted).

The FAC alleges Defendant Newsom personally participated in Plaintiff's injury by signing the State Order. (FAC ¶¶ 8, 17, 19, 21-22, 32-43.) The FAC also alleges Defendant Angell personally participated in Plaintiff's injury by signing the State public health directives, which included the Essential Workforce memorandum that identified exempt essential business categories including "faith-based services that are provided through streaming and other technology." (FAC ¶¶ 10, 17, 22, 35.) The County Order, the San Diego County Sheriff Department's enforcement of the order, and prohibition of drive-in services were directly derived from the State Order and public health directives signed by Defendants Newsom and Angell. Plaintiff's purported injury of being prohibited from in-person congregation via drive-in service was not an independent action of the County or a third party, rather there is a causal chain between Defendant Newsom and Angell's personal action and injury, therefore, the causation element of standing is met for these two defendants. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) (the causation element does not require defendant's action to be the "very last step in the chain of causation"); *see also Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (finding causation connection between the promulgation of the federal regulation challenged in the case and the later promulgation of California regulations). The State Defendants' motion is **DENIED** to the extent it seeks dismissal for lack of Article III standing as to Defendants Newsom and Angell.

Plaintiff also claims that Defendant Becerra caused constitutional violations because his job as Attorney General required him to supervise all sheriffs in the state, including the San Diego County Sheriff's Department. (Doc. 25 (citing FAC ¶ 9)); *see also* CAL. CONST. ART. V, § 13. However, as noted above, a defendant cannot be held liable under a Section 1983 claim when the sole theory of liability is respondeat superior. *Taylor*, 880 F.2d at 1045. Because Plaintiff failed to allege facts showing Defendant Becerra had any direct,

personal participation in the San Diego County Sheriff's Department enforcement of the County Order and there are insufficient facts to support a causal connection between his conduct and the alleged constitutional violations, the causation element of standing is lacking. *Taylor*, 880 F.2d at 1045. The State Defendants' motion is **GRANTED** to the extent it seeks dismissal for lack of Article III standing as to Defendant Becerra.

        ii.   *Qualified Immunity*

The State Defendants argue Plaintiff has not pleaded a violation of any clearly established right, therefore, the FAC should be dismissed under the doctrine of qualified immunity. (Doc. 21 at 24.)

Qualified immunity shields government officials from civil damages liability under Section 1983 unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal citation omitted); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). A right is "clearly established" when "at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *See Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Morales v. Fry*, 873 F. 3d 817, 821 (9th Cir. 2017). To show a right is clearly established, a case does not need to be directly on point, but Plaintiff must show existing precedent that places the statutory or constitutional question beyond debate, and the precedent must be clear enough that every reasonable official would interpret it to establish the particular rule plaintiff is seeking to apply. *Wesby*, 138 S. Ct. at 590; *Ashcroft*, 563 U.S. at 741.

The Supreme Court has repeatedly stressed that the clearly established right must be defined with specificity, and courts must not define clearly established law "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590.

Courts must look at the specific context of the case when examining whether the violative nature of defendant's particular conduct is clearly established, and so long as no precedent "squarely governs the facts" the state official is entitled to qualified immunity. *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016).  To overcome qualified immunity, the plaintiff must identify clearly established law that is particularized to the facts of the case, or in other words, case precedent where a defendant acting under similar circumstances was held to have violated a constitutional right. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (the prior case law must be "controlling," meaning from the Ninth Circuit or Supreme Court, or otherwise "be embraced by a 'consensus' of courts outside the relevant jurisdiction.").

District courts have discretion to decide which of the two prongs of the qualified immunity analysis to approach first and they are encouraged to address the prongs in the order that would expedite resolution of the case. *Morales*, 873 F. 3d at 822; *Ashcroft*, 563 U.S. at 735.  The Supreme Court has stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" to preserve the doctrine's status as "a true immunity from suit rather than a mere defense to liability." *Morales*, 873 F. 3d at 822.

Here, the Court finds it appropriate to consider qualified immunity at the motion to dismiss stage and it will first address the second prong of the qualified immunity analysis. *Morales*, 873 F. 3d at 822; *Ashcroft*, 563 U.S. at 735.

As to the State Defendants' alleged violations of the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, there was no clear precedent in March or April 2020 that would have put every reasonable official on notice that restricting in person religious gatherings to slow the spread of the COVID-19 virus was clearly and definitively unconstitutional.  Plaintiff fails to cite any factually-similar precedent to suggest that its prima facie case rests upon

clearly established law. *White*, 137 S. Ct. at 552; *Sharp*, 871 F.3d at 911; *Gordon v. Cty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (it is plaintiff's burden to show the rights allegedly violated were clearly established). Instead, Plaintiff contends qualified immunity does not apply "because the right to assemble for Church is a clearly established right" and "it has been clearly established that no government in this nation can interfere with the free exercise of religion, show hostility to religion, or make assembly a crime." (Doc. 25 at 5, 8.) However, this ignores Supreme Court guidance to avoid defining clearly established law at a "high level of generality." *See al-Kidd*, 563 U.S. at 742; *see also Gordon*, 6 F.4th at 969 (stating, "[q]ualified immunity is not meant to be analyzed in terms of a 'general constitutional guarantee,' but rather the application of general constitutional principles in a particular context.") (internal citation omitted).

In the spring of 2020, the contours of the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment were not sufficiently clear as to whether the State and/or County could impose restrictions on religious worship services in an effort to curtail transmission of the COVID-19 virus. At a minimum, courts were guided by *Jacobson v. Commonwealth of Massachusetts*, which held "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members" as the Constitution does not guarantee "an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Jacobson*, 197 U.S. 11, 27 (1905). Courts were also guided by *Prince v. Massachusetts* which provides "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease . . ." 321 U.S. 158, 166-167 (1944). Similarly, courts that decided the issue of whether a state's COVID-19 restrictions on religious worship services violated the constitution found no likelihood of success on such claims. *Abiding Place Ministries v. Wooten et al.*, Case No. 3:20-cv-00683-BAS-

AHG, Doc. 10 at 17-21 (Apr. 13, 2020) (denying temporary restraining order seeking to enjoin enforcement of state and county orders restricting religious services, in part, due to plaintiff's failure to demonstrate a likelihood of success on their claims that the orders violated the free exercise of religion, freedom of assembly, and Fourteenth Amendment due process)[6]; *Gish v. Newsom*, No. EDCV20-755-JGB-KKx, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (denying temporary restraining order seeking to enjoin enforcement of state and county orders restricting religious services, practices, or activities on basis that plaintiff failed to demonstrate a likelihood of success on their claim that the orders violated the free exercise of religion); *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, (E.D. Cal. May 5, 2020) (denying temporary restraining order seeking to enjoin enforcement of state and county orders restricting in-person religious services on basis that plaintiff failed to demonstrate a likelihood of success on their claims that the orders violated the free exercise of religion).  In considering the foregoing, the State Defendants are entitled to qualified immunity because in March and April of 2020 (i.e., the time of the challenged conduct), there was no prior, factually comparable controlling precedent that would have informed the State Defendants that enacting State Orders and State public health directives restricting gatherings to reduce the spread of COVID-19 violated a clearly established constitutional right "beyond debate." *Wesby*, 138 S. Ct. at 590; *Ashcroft*, 563 U.S. at 741.

Without any binding case precedent available at the time of the challenged conduct that establishes a defendant's restriction of religious services as a result of the pandemic violates the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and

---

[6] (*See* Doc. 21-1, Decl. of Todd Grabarsky, Ex. 14.)

Equal Protection Clause of the Fourteenth Amendment, Plaintiff cannot overcome qualified immunity. *White,* 137 S. Ct. at 552. Accordingly, the State Defendants' motion to dismiss Plaintiff's first, second, third, fourth, fifth, and sixth causes of action on qualified immunity grounds is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, State Defendants' motion to dismiss for lack of subject matter jurisdiction is **GRANTED** in part and **DENIED** in part, and State Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED**.

**IT IS SO ORDERED**.

DATE: February 14, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE