1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ABIDING PLACE MINISTRIES, a Church, | Case No.: 3:21-cv-00518-RBM-DDL |
| 12 | |
| 13                    Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART COUNTY** |
| 14  v. | **DEFENDANTS' MOTION TO DISMISS** |
| 15  GAVIN NEWSOM, in his individual capacity; et al., | |
| 16 | |
| 17                    Defendants. | **[Doc. 22]** |

18
19          On May 28, 2021, Plaintiff Abiding Place Ministries ("Plaintiff") filed their First

20   Amended Complaint (Doc. 13) ("FAC"), naming Gavin Newsom, Xavier Becerra, Sonia

21   Y. Angell, Wilma J. Wooten, County of San Diego ("County"), and Does 1 through 100

22   as defendants.  Aside from the County, all Defendants[1] have been named in their individual

23

24

25   [1] The Court notes that the header of each cause of action within the FAC contains a
26   parenthetical that each claim is directed "Against All Defendants In Their Individual
     Capacity Only."  (FAC at 14-20.)  Although the header omits reference to the County, the
27   Court will construe this omission as an error in light of the parties' briefing on the motion
     to dismiss.
28
                                        1

capacities.[2]   On August 30, 2021, Defendants Wilma J. Wooten ("Wooten") and the County of San Diego (collectively "County Defendants") filed a Motion to Dismiss Plaintiff's FAC for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (Doc. 22.).   The County Defendants filed a Request for Judicial Notice accompanying their motion to dismiss, which the Court will address herein. (Doc 22-2.)   On August 30, 2021, Defendants Gavin Newsom, Xavier Becerra, and Sonia Y. Angell ("State Defendants"), in their individual capacities, filed a Motion to Dismiss Plaintiff's FAC.  (Doc. 21.)   On October 18, 2021, Plaintiff filed a combined response in opposition to the State Defendants' Motion and the County Defendants' Motion.  (Doc. 25.)   The County Defendants filed a reply on November 15, 2021.  (Doc. 27.)   For the reasons outlined below, the County Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

A.    Factual Background

On March 4, 2020, Governor of California Gavin Newsom declared a State of Emergency in response to the threat of COVID-19.  (FAC ¶ 18.)   On March 19, 2020, Governor Newsom issued Executive Order N-33-20, also known as the "Stay at Home Order" (herein "State Order").  (*Id.* at ¶ 19.)   This State Order required that all Californians stay home or at their place of residence except as needed to "maintain the continuity of operations of the federal critical infrastructure sectors[.]"  (*Id.* at ¶ 19.)   It further provided that all Californians "must have access to such necessities as food, prescriptions, and health care" and therefore "may leave their homes or places of residence to obtain or perform [these] functions . . . or to otherwise facilitate authorized necessary activities[.]"  (*Id.* at ¶ 20.)   On March 22, 2020, the State published a list of "Essential Critical Infrastructure

---

[2] Plaintiff's original complaint filed on March 24, 2021, did not name Wooten as a defendant.

2

Workers" naming "faith-based services that are provided through streaming and other technology" as one of the exempted essential categories.  (*Id*. at ¶ 22.)

On March 27, 2020, San Diego Public Health Officer Wilma J. Wooten "promulgated an order prohibiting gatherings of more than ten persons . . . subject to all the same exemptions as the State Order" ("County Order").  (*Id.* at ¶ 32.)  On April 8, 2020, Wooten revised the County Order changing the cap on gatherings from ten persons to one person, effective April 9, 2020.  (*Id.* at ¶¶ 40-41; Doc. 13-3, Ex. D at 19-24.)

Plaintiff is a church based in San Diego County, which hosts its small congregation of typically fewer than 100 persons for Sunday service at their outdoor ranch venue, the Mission Base.  (FAC at ¶¶ 23, 25.)  "Because of the pandemic and the closure Orders, the Church met outdoors—at the Mission Base—for worship on March 22, 2020.  The following week, March 29, the Church met under a large open-air tent at the Mission Base . . ."  (*Id.* at ¶ 30.)  Plaintiff claims they interpreted the State Order describing "faith-based services" as essential to "exempt it from the business closures" and they "believed that its members were permitted to leave their home when necessary."  (*Id.* at ¶ 31.)  The FAC alleges it was not until March 29, 2020 when a San Diego Sheriff's Deputy visited the Church's service, and early April, when meeting with County Sheriff officials, that the Church became aware they could not congregate outdoors due to the State and County Orders.  (*Id.* at ¶¶ 33-35.)

On April 2, 2020, Plaintiff, through their attorney, Jeremiah Graham, and pastor, Mark Spitsbergen, proposed multiple mitigation protocols to the San Diego County Sheriff's Department "to avoid conflict with the County's restrictions while maintaining in-person gatherings" including offering drive-in services.  (*Id.* at ¶¶ 36-37; Doc. 13-1, Ex. A at 1-10.)  On April 4, 2020, Wooten wrote a letter informing Plaintiff that its members "must stay at home and not congregate."  (FAC at ¶ 38; Doc. 13-2, Ex. B at 2-3.)  Plaintiff then proposed additional mitigation protocols, which were rejected by an April 8, 2020 letter from Wooten.  (*Id.* at ¶¶ 39-41; Doc. 13-3, Ex. C at 2-26.)  Wooten's letter to Plaintiff

3

stated, "[m]embers of your congregation are not allowed to travel to your site.  This would be an unlawful gathering, even if they remain in their vehicles as they did last Sunday." (*Id.* at ¶ 42; Doc. 13-3, Ex. C at 16-17.)  It further advised "[i]f the members of your congregation do not abide by my Order, the Sheriff will take actions necessary to enforce the Order."  (*Id.* at ¶ 42; Doc. 13-3, Ex. C at 16-17.)  Consequentially, Plaintiff did not congregate in person on April 12 and April 19, 2020.  (*Id.* at ¶¶ 45-47.)  On April 18, 2020, Plaintiff became aware of a statement made by State officials clarifying that "drive-in services were now permissible" under the State Order.  (*Id.* at ¶ 46.)  On April 20, 2020, the County entered its "Supplemental Status Update" authorizing drive-in worship services which adopted the Governor's interpretation of the State Order by allowing drive-in services.  (*Id.* at ¶¶ 48-49.)

## B.   Procedural Background

On May 28, 2021, Plaintiff's FAC named Wooten in her individual capacity only. The FAC is a revival of an earlier filed case filed in this District, *Abiding Place Ministries v. Wooten et al.*, Case No. 3:20-cv-00683-BAS-AHG, which was voluntarily dismissed without prejudice "after the Defendants modified their COVID-19 policies prohibiting houses of worship from holding in-person gatherings," thus rendering the lawsuit moot.[3] (FAC at ¶ 2); *see also* Case No. 3:20-cv-00683-BAS-AHG, Docs. 58, 66-67.[4]  The FAC here asserts six claims for relief, including violations of the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of

---

[3] U.S. District Judge Cynthia Bashant denied Plaintiff's application for a temporary restraining order and denied Plaintiff's motion for preliminary injunction seeking to enjoin enforcement of orders restricting Plaintiff's engagement in religious services.  *See* Case No. 3:20-cv-00683-BAS-AHG, Docs. 2, 7-8, 10, 24, 58.

[4] The prior case originally named Wooten in her official capacity as Public Health Officer for San Diego County, but Abiding Place subsequently amended the complaint and did not name Wooten as a defendant.  *See Abiding Place Ministries*, Case No. 3:20-cv-00683-BAS-AHG, Docs. 1, 22, 60.

4

the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment.  (FAC at 14-21.)  Plaintiff seeks relief only in the form of nominal damages plus attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988.  (FAC at  ¶¶ 2-4.)

The County Defendants argue three separate grounds for dismissal: (1) Wooten is entitled to qualified immunity; (2) the County Defendants cannot be held liable under 42 U.S.C. § 1983 ("Section 1983") for enforcing a State Order; (3) the County is entitled to Eleventh Amendment immunity; and (4) Plaintiff's second, third, fourth, and fifth causes of action fail to state a claim for relief under Rule 12(b)(6).  (Doc. 22-1.)  Plaintiff contends qualified immunity should not extend to Wooten, the County is not entitled to Eleventh Amendment immunity, and Plaintiff has pled sufficient facts to support all six causes of action asserted in the FAC.  (Doc. 25 at 5-16.)

## II.   REQUEST FOR JUDICIAL NOTICE

The Court first addresses the County Defendants' request for judicial notice which accompanied its motion to dismiss.  (Doc 22-2 at 1.)

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  FED. R. CIV. P. 12(d).  A court may, however, consider materials subject to judicial notice without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  A court may take judicial notice of court filings, other matters of public record, and documents that are readily verifiable, including public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d

5

741, 746 n.6 (9th Cir. 2006); *see U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotations omitted); *see also Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG POR, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) ("[i]nformation on government agency websites has often been treated as properly subject to judicial notice"). A court may also take judicial notice of publications introduced "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

The County Defendants request the Court take judicial notice of nineteen exhibits, including the hearing transcript denying Abiding Place's application for temporary restraining order ("TRO") and other filings in the predecessor case[5] (Exhibits 1, 2, 12), a TRO hearing transcript and TRO briefing in similar COVID-19 cases[6] (Exhibits 11, 18), government websites tracking COVID-19 metrics (Exhibits 3-4), Governor Newsom's Proclamation of a State of Emergency and Executive Order N-33-20 (Exhibits 5, 7), President Trump's Proclamation on Declaring a National Emergency Concerning COVID-19 (Exhibit 6), California State Public Health Officer's March 22, 2020 list of designated "Essential Critical Infrastructure Workers" and its April 28, 2020 revised list (Exhibits 8, 13), County of San Diego Orders of the Health Officer and Emergency Regulations (Exhibits 9-10, 15, 17), State of California's COVID-19 Industry Guidance dated May 25,

---

[5] *See Abiding Place Ministries v. Wooten et al.*, Case No. 3:20-cv-00683-BAS-AHG.
[6] *Gish v. Newsom*, No. EDCV 20-755-JGB-KKx, Doc. 13 (C.D. Cal. Apr. 17, 2020); *South Bay United Pentecostal Church v. Newsom*, No. 3:20-cv-00865-BAS-AHG (S.D. Cal. May 15, 2020).

2020 and June 12, 2020 (Exhibits 14, 16), and a May 7, 2020 letter from the Director of the Governor's Office of Emergency Services to the Chief Administrative Officer of Sutter County (Exhibit 19).  Plaintiff does not object to the request nor does it call into question the credibility of the source of any material subject to the request for judicial notice.  (Doc. 25.)

The government documents, information on government websites, and court filings referenced above are all proper subjects of judicial notice.  The Court therefore **GRANTS** the County Defendants' request for judicial notice.

### III.   **MOTION TO DISMISS**

A.   Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive

7

a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

B.    Analysis

    i.    *Qualified Immunity*

The County Defendants argue Plaintiff has not pleaded a violation of any clearly established right, therefore, the FAC should be dismissed under the doctrine of qualified immunity as to Wooten.  (Doc. 22-1 at 15.)

Qualified immunity shields government officials from civil damages liability under Section 1983 unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal citation omitted); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).  A right is "clearly established" when "at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *See Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Morales v. Fry*, 873 F. 3d 817, 821 (9th Cir. 2017).  To show a right is clearly established, a case does not need to be directly on point, but Plaintiff must show existing precedent that places the statutory or constitutional question beyond debate, and the precedent must be clear enough that every reasonable official would interpret it to establish the particular rule plaintiff is seeking to apply.  *Wesby*, 138 S. Ct. at 590; *Ashcroft*, 563 U.S. at 741.

The Supreme Court has repeatedly stressed that the clearly established right must be

8

defined with specificity, and courts must not define clearly established law "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590. Courts must look at the specific context of the case when examining whether the violative nature of defendant's particular conduct is clearly established, and so long as no precedent "squarely governs the facts" the state official is entitled to qualified immunity. *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016). To overcome qualified immunity, the plaintiff must identify clearly established law that is particularized to the facts of the case, or in other words, case precedent where a defendant acting under similar circumstances was held to have violated a constitutional right. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (the prior case law must be "controlling," meaning from the Ninth Circuit or Supreme Court, or otherwise "be embraced by a 'consensus' of courts outside the relevant jurisdiction.").

District courts have discretion to decide which of the two prongs of the qualified immunity analysis to approach first and they are encouraged to address the prongs in the order that would expedite resolution of the case. *Morales*, 873 F. 3d at 822; *Ashcroft*, 563 U.S. at 735. The Supreme Court has stressed the importance of deciding qualified immunity "at the earliest possible stage in litigation" to preserve the doctrine's status as "a true immunity from suit rather than a mere defense to liability." *Morales*, 873 F. 3d at 822.

Here, the Court finds it appropriate to consider qualified immunity at the motion to dismiss stage and it will first address the second prong of the qualified immunity analysis. *Morales*, 873 F. 3d at 822; *Ashcroft*, 563 U.S. at 735.

As to Wooten's alleged violations of the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, there was no clear precedent in March or April 2020 that would have put

9

every reasonable official on notice that promulgating orders restricting in person religious gatherings to slow the spread of the COVID-19 virus was clearly and definitively unconstitutional.  Plaintiff fails to cite any factually-similar precedent to suggest that its prima facie case rests upon clearly established law.  *White*, 137 S. Ct. at 552; *Sharp*, 871 F.3d at 911; *Gordon v. Cty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (it is plaintiff's burden to show the rights allegedly violated were clearly established).  Instead, Plaintiff contends qualified immunity does not apply "because the right to assemble for Church is a clearly established right" and "it has been clearly established that no government in this nation can interfere with the free exercise of religion, show hostility to religion, or make assembly a crime."  (Doc. 25 at 5, 8.)  However, this ignores Supreme Court guidance to avoid defining clearly established law at a "high level of generality."  *See al-Kidd*, 563 U.S. at 742; *see also Gordon*, 6 F.4th at 969 (stating, "[q]ualified immunity is not meant to be analyzed in terms of a 'general constitutional guarantee,' but rather the application of general constitutional principles in a particular context.") (internal citation omitted).

In the spring of 2020, the contours of the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment were not sufficiently clear as to whether the State and/or County could impose restrictions on religious worship services in an effort to curtail transmission of the COVID-19 virus.  At a minimum, courts were guided by *Jacobson v. Commonwealth of Massachusetts*, which held "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members" as the Constitution does not guarantee "an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." *Jacobson*, 197 U.S. 11, 27 (1905).  Courts were also guided by *Prince v. Massachusetts* which provides "[t]he right to practice religion freely does not include liberty to expose the community . . . to communicable disease . . ." 321 U.S. 158, 166-167

10

(1944).  Similarly, courts that decided the issue of whether a state's and county's COVID-19 restrictions on religious worship services violated the constitution found no likelihood of success on such claims.  *Abiding Place Ministries v. Wooten et al.*, Case No. 3:20-cv-00683-BAS-AHG, Doc. 10 at 17-21 (Apr. 13, 2020) (denying temporary restraining order seeking to enjoin enforcement of state and county orders restricting religious services, in part, due to plaintiff's failure to demonstrate a likelihood of success on their claims that the orders violated the free exercise of religion, freedom of assembly, and Fourteenth Amendment due process); *Gish v. Newsom*, No. EDCV20-755-JGB-KKx, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (denying temporary restraining order seeking to enjoin enforcement of state and county orders restricting religious services, practices, or activities on basis that plaintiff failed to demonstrate a likelihood of success on their claim that the orders violated the free exercise of religion); *Cross Culture Christian Ctr. v. Newsom*, 445 F. Supp. 3d 758, (E.D. Cal. May 5, 2020) (denying temporary restraining order seeking to enjoin enforcement of state and county orders restricting in-person religious services on basis that plaintiff failed to demonstrate a likelihood of success on their claims that the orders violated the free exercise of religion).  In considering the foregoing, Wooten is entitled to qualified immunity because in March and April of 2020 (i.e., the time of the challenged conduct), there was no prior, factually comparable controlling precedent that would have informed her that promulgating County orders restricting gatherings to reduce the spread of COVID-19 violated a clearly established constitutional right "beyond debate." *Wesby*, 138 S. Ct. at 590; *Ashcroft*, 563 U.S. at 741.

Without any binding case precedent available at the time of the challenged conduct that establishes a defendant's restriction of religious services as a result of the pandemic violates the Free Exercise Clause of the First Amendment, Establishment Clause of the First Amendment, Free Speech Clause of the First Amendment, Freedom of Assembly Clause of the First Amendment, Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment, Plaintiff cannot overcome

11

qualified immunity.  *White,* 137 S. Ct. at 552.  Accordingly, the County Defendants' motion to dismiss Plaintiff's first, second, third, fourth, fifth, and sixth causes of action against Wooten on qualified immunity grounds is **GRANTED**.

        *ii.  County's Enforcement of State Order*

        The County Defendants contend they cannot be held liable under Section 1983 for enforcing Governor Newsom's State Order and they "had no authority to permit activities the State Order prohibited."  (Doc. 22-1 at 22-23.)  Citing to *Doby v. DeCrescenzo*, the County Defendants contend "when a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the *Monell* line of cases."  (*Id.* at 22 (citing *DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999), citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).)  They contend its "Public Health Orders were coextensive with the State Orders, and permitted religious services to the maximum extent allowed by the State Order."  (*Id.* at 23.)  Without citation to any authority, Plaintiff counters that "[a]s to . . . relief from liability, the County is a municipality, and not entitled to State immunity" and it has alleged "each Defendant was an inextricable participant in depriving Plaintiff of its rights."  (Doc. 25 at 5, 10.)  The County Defendants argue that Plaintiff's conclusory opposition constitutes a waiver of any argument on this issue.  (Doc. 27 at 3-4.)  The Court, however, is inclined to address this issue substantively.

        "The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom."  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134 (citing *Monell*, 436 U.S. at 694).  "The custom or policy must be a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* (internal citations and quotations omitted).  The policies can include written policies, unwritten customs or practices, failure to train municipal employees on avoiding certain obvious constitutional violations, "and,

in rare instances, single constitutional violations are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." *Id.* (internal citations omitted).

Here, Plaintiff has alleged the County "is responsible for promulgating, interpreting and enforcing the Orders issued by the San Diego County Public Health Officer." (FAC at ¶ 12.)  It has alleged the County's April 8, 2020 revised Order placed "heightened restrictions on non-exempt private gatherings" including changing the cap on gatherings from ten persons to one person. (*Id.* at ¶¶ 40-41; Doc. 13-3, Ex. D at 19-24.)  The County threatened enforcement, penalties, and fines if Plaintiff did not comply with the County Order. (*Id.* at ¶ 42.)  Plaintiff alleges this action by the County "forced the Church's members to remain away from church against their will, under threat of punishment . . ." (*Id.* at ¶ 43.)  Plaintiff contends the State and County Orders and Defendants' enforcement thereof violated their rights. (*Id.* at ¶¶ 56, 63, 65-66, 74, 82, 90, 96.)  In light of the foregoing, the allegations of the FAC regarding the County's alleged unconstitutional policy is sufficient overcome the County Defendants' argument that it cannot be liable under *Monell*.  Accordingly, the County Defendants' motion to dismiss is **<u>DENIED</u>** on this ground.

       *iii.   Eleventh Amendment Immunity*

The County Defendants also contend that their Orders merely incorporated California's guidelines, and thus, they were simply enforcing state law and are entitled to immunity under the Eleventh Amendment. (Doc. 22-1 at 25-26.)  Plaintiff contends the Eleventh Amendment does not extend to counties, and the County Defendants have failed to satisfy the narrow exception which applies when a county is acting as an arm of the state. (Doc. 25 at 10-11.)

Normally, neither counties nor municipalities enjoy Eleventh Amendment immunity. *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979) ("[T]he Court has consistently refused to construe the Amendment to afford

13

protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'").  "State sovereign immunity does not extend to county and municipal governments, unless state law treats them as arms of the state." *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (internal citation omitted). Application of "Eleventh Amendment immunity as an arm of the State . . . is determined by examining five factors (known as the *Mitchell* factors): (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central governmental functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only the name of the state; and (5) the corporate status of the entity." *See Culinary Studios v. Newsom*, 517 F. Supp. 3d 1042,1060 (E.D. Cal. Feb. 8, 2021) (citations omitted); *see also Mitchell v. L.A. Cty. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).  The first factor is the most important.  *Culinary Studios*, 517 F. Supp. 3d at 1060 (citations omitted).  "[T]he second factor has two components: (1) whether a matter is of statewide and not local concern, and (2) the extent to which the state exercises centralized government control over the performance of the particular function at issue." *Id.* (citation omitted).

Consistent with other courts considering COVID-19 issues and weighing the *Mitchell* factors, the Court declines to find the County Defendants were acting as an arm of the state.  *See generally Culinary Studios*, 517 F. Supp. 3d at 1059-61; *Bols v. Newsom*, 515 F. Supp. 3d 1120, 1133-35 (S.D. Cal. Jan. 26, 2021), *reconsideration denied*, No. 20-CV-873-BEN-BLM, 2021 WL 1313545 (S.D. Cal. Apr. 8, 2021).  As set forth Section III.B.ii. *supra*, the County Orders were not merely "co-extensive with the State Order." *Supra* pp. 12-13.  The FAC alleges the County's April 8, 2020 Order placed "heightened restrictions on non-exempt private gatherings" and the County threatened enforcement, penalties, and fines related to its own Order.  (*Id.* at ¶¶ 40-41; Doc. 13-3, Ex. D at 19-24.) As such, this first *Mitchell* factor weighs against the County because it is disputed whether a money judgment would be satisfied out of state funds.  The County does not dispute that

14

the third and fourth factors weight against it.  (Doc. 22-1 at 27.)  The second *Mitchell* factor weighs in favor of the County in that it was following the State's emergency orders.  *See Culinary Studios*, 517 F. Supp. 3d at 1060-61.  As to the fifth *Mitchell* factor, "the Supreme Court has already held that California counties have independent corporate status and are not agents of the State of California." *Ray v. Cty. of Los Angeles*, 935 F.3d 703, 711, n.7 (9th Cir. 2019) (citing *Moor v. Alamda Cty.*, 411 U.S. 693, 719 (1973)).  Weighing these factors, the Court concludes that the County Defendants are not entitled to immunity under the Eleventh Amendment and the County Defendants' motion to dismiss is **DENIED** on this ground.

### iv.   Establishment Clause

The County Defendants contend the FAC's second cause of action fails to allege a viable Establishment Clause claim against it because the State and County Orders had a secular purpose and the orders and enforcement decisions did not endorse any religion because the orders banned gatherings for all religions along with secular gatherings.  (Doc. 22-1 at 27-28.)  Plaintiff contends the State and County Orders and Defendants' "ad hoc enforcement thereof had the primary effect of inhibiting religious activity."  (Doc. 25 at 13.)  It contends the Orders "exempted 153 categories of in-person gatherings, giving 152 of those favored status (no restrictions), and allowing religious gatherings only through streaming or other technology."  (Doc. 25 at 13; FAC ¶¶ 22, 44.)

A government action violates the Establishment Clause if it lacks a secular legislative purpose or endorses religion.  *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971); *Trunk v. City of San Diego*, 629 F.3d 1099, 1106 (9th Cir. 2011) ("the Supreme Court essentially has collapsed the[ ] last two prongs [of the test articulated in *Lemon*] to ask whether the challenged governmental practice has the effect of endorsing religion.")); *but see Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2424-28 (2022) (criticizing the Ninth Circuit's use of the *Lemon* test, specifically as to the endorsement test).

Here, the FAC fails to allege the County Orders lacked a secular purpose.  *See Gish*,

2020 WL 1979970, at *7 (denying TRO, in part, on basis that state and county orders likely did not violate the Establishment Clause).  However, it alleges the County's Orders and Defendants' enforcement "had the primary effect of inhibiting religious activity" and caused "excessive government entanglement with religion."  (FAC ¶¶ 67-67.)  Plaintiff contends its religious services exempted from gatherings were treated differently than other public gatherings.  (FAC ¶¶ 17, 44-45.)  At this stage of the pleadings, the County Defendants' motion to dismiss the second cause of action is **DENIED**.

> v.  *Freedom of Speech & Freedom of Assembly*

The County Defendants seek to dismiss Plaintiff's third and fourth causes of action premised on alleged violations of the First Amendment's freedom of speech and freedom of assembly clauses.  They contend the Orders themselves are content-neutral time, place, and manner regulations of speech and satisfy the test set forth in *Perry Education Association v. Perry Local Education Association*.  (Doc. 22-1 at 29 (citing *Perry*, 460 U.S. 37, 45 (1983)).)  Plaintiff counters that its FAC alleges the County Defendants engaged in content-based restrictions on speech and assembly, as the enforcement of the County Orders depended on whether the gatherings were for religious purposes or secular purposes.  (Doc. 25 at 14-15.)

The level of scrutiny applied to restrictions on First Amendment speech and assembly depends on whether the restrictions are content and viewpoint-based restrictions or content-neutral time, place, and manner restrictions.  *Turner v. Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980).  Content and viewpoint-based restrictions are subject to strict scrutiny while content-neutral restrictions are subject to intermediate scrutiny.  *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Courts "consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys."  *Reed*, 576 U.S. at 163 (internal quotations and citation omitted).

16

Whatever level of scrutiny is applied, Plaintiff has alleged they were prohibited from engaging in protected speech and assembling in person for the purpose of worship while other gatherings promoting non-religious speech were permissible.  (FAC ¶¶ 42-45, 73-76.)  Taking those allegations as true, Plaintiff has plausibly alleged claims for violations of the First Amendment's freedom of speech and freedom of assembly clauses. Accordingly, the County Defendants' motion to dismiss the third and fourth causes of action is **DENIED**.

> vi.   *Fourteenth Amendment Due Process*

Plaintiff's fifth cause of action alleges a violation of their substantive due process rights under the Fourteenth Amendment.  (FAC ¶¶ 89-94.)   The County Defendants contend the State and County's Orders provided justification for the emergency restrictions in light of the "emerging, once-in-a-lifetime pandemic" such that Plaintiff fails to state a claim for relief.  (Doc. 22-1 at 31.)

The Fourteenth Amendment forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience or interferes with the rights implicit in the concept of ordered liberty."  *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notice of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, Plaintiff's challenge to the County Orders lies within the First Amendment's Free Exercise Clause, and the County Defendants do not seek to dismiss that claim. Because the Free Exercise Clause "provides an explicit textual source of constitutional protection" against the type of conduct challenged by Plaintiff, that clause preempts Plaintiff's substantive due process claim.  *Patel v. Penman*, 103 F.3d 868, 874-875 (9th Cir. 1996) (citations, internal quotation marks, and brackets omitted), *overruled in part on*

17

*other grounds as recognized by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (9th Cir. 2007).  Accordingly, the County Defendants' motion to dismiss the fifth cause of action is **GRANTED**.

       vii.   *Equal Protection*

Plaintiff's sixth cause of action is premised upon a violation of the Fourteenth Amendment's Equal Protection Clause and the County Defendant's alleged intentional and arbitrary categorization of conduct as either "essential" or "non-essential."  (FAC ¶¶ 95-102.)  Plaintiff alleges the targeting of religious services warrants "heightened review" and Plaintiff has alleged facts sufficient to support its claim.  (Doc. 25 at 16.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal citation omitted).  An equal protection claim may be established in two ways.  The plaintiff may claim the defendant intentionally discriminated against him or her based upon membership in a protected class, which triggers strict scrutiny review of the subject law, rule, or policy. *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-CV-0424-BAS-DDL, 2022 WL 16722357, at *10 (S.D. Cal. Nov. 4, 2022) (citing *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 307–08, 133 S.Ct. 2411, 186 L.Ed.2d 474 (2013)).  Second, the plaintiff "may claim membership of a non-suspect group" that the defendant "treated differently than similarly situated individuals, without any rational basis or legitimate government purpose for doing so."  *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

Plaintiff contends its religious services exempted from gatherings were treated differently than other public gatherings.  (FAC ¶¶ 17, 44-45.)  The FAC states, "other

public gatherings were not faced with the same threat of criminal penalties nor inhibited by the same arguments justifying the closure of the houses of worship." (*Id.* at ¶ 44.)  For example, "on April 10, 2020, Defendant San Diego County endorsed and promoted various mass gatherings for the purpose of paying tribute to regional first responders and medical workers." (*Id.*)  On the other hand, "[t]he Church did not hold communal worship service on April 12, 2020." (*Id.* at ¶ 45.)  Plaintiff contends Defendants "intentionally and arbitrarily categorized individuals and conduct as either 'essential' or 'non-essential.'" (*Id.* at ¶ 99.)  At the pleading stage, Plaintiff has alleged sufficient facts to state a claim for violation of the Equal Protection clause.  Therefore, the County Defendants' motion to dismiss the sixth cause of action is **DENIED**.

       *vii.*    *Leave to Amend*

      Neither the County Defendants nor Plaintiff address whether leave to amend should be granted.

      When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).  When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962).  These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint. *Id.*  The Ninth Circuit has held that "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis omitted).  In *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020),

the Ninth Circuit affirmed a district court's denial of leave to amend on futility grounds reasoning "[t]he problem with Plaintiffs' complaint, however, is not the sufficiency of their factual allegations" but "[r]ather . . . Plaintiffs' legal theories fail." *Id.* There, "[a]mending the complaint [would] not change, for example, the extent of the rights that are protected." *Id*.

The parties have been litigating this COVID-19-related dispute since April 9, 2020. *See Abiding Place Ministries v. Wooten et al.*, Case No. 3:20-cv-00683-BAS-AHG, Doc. 1. As noted above, this case is a revival of an earlier filed case filed in this District, where Plaintiff had the opportunity to amend its complaint three times and eventually voluntarily dismissed the case without prejudice. *Id.* at Docs. 1, 22, 60. In the instant case, Plaintiff has also had the opportunity to amend its complaint. (*See* Docs. 1, 13.) In light of the Court's rulings on the County and State Defendants' motions to dismiss granting dismissal of the individual defendants on qualified immunity grounds, it appears any further amendment would be futile at this juncture. While there has been no showing of bad faith or undue prejudice, weighing the remaining *Foman* factors, the Court declines to grant further leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, County Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's first, second, third, fourth, and sixth causes of action survive as against the County.

**IT IS SO ORDERED**.

DATE:  February 14, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

20